UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEOVANI DAVID LOPEZ LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE, *et al.*,<br><br>Respondents. | No. 25-cv-12725-IT |

### RESPONSE TO ORDER TO SHOW CAUSE (Doc. No. 12)

The Court should not hold Respondents in contempt because they did not "violat[e] the court's order by removing Petitioner from the District without 72 hours notice to the court." Electronic Order (Oct. 3, 2025), Doc. No. 12. To the contrary, on September 23, 2025, U.S. Immigration and Customs Enforcement ("ICE") transferred Petitioner from Massachusetts to New York on a flight that "departed Bedford, Massachusetts at approximately 5:05 p.m.,"[1] which was fifteen minutes before the Court issued its No-Transfer Order at 5:20 p.m., prohibiting Petitioner's transfer from Massachusetts absent advance notice, Order Concerning Service of Petition & Stay of Transfer or Removal (Sept. 23, 2025), Doc. No. 4 at 3-4 ("No-Transfer Order"). Nor did ICE's subsequent transfer of Petitioner from New York to Louisiana violate the No-Transfer Order. At the very least, the No-Transfer Order was not "clear and unambiguous" regarding any transfer between two non-Massachusetts districts, which precludes an order of contempt here. *See Hawkins v. Dept. of Health and Human Servs. for N.H.*, 665 F.3d 25, 31 (1st Cir. 2012).

---

[1] Ex. 1, Chan Decl. (Sept. 25, 2025), ¶ 8.

Accordingly, the Court should not hold Respondents in contempt for violating the Court's No-Transfer Order, consistent with the Supreme Court's directive to exercise "restraint and discretion" in exercising the Court's power of contempt. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).

## I.  BACKGROUND

On September 23, 2025, Petitioner Geovani David Lopez Lopez filed a petition for a writ of habeas corpus. Pet. for Writ of Habeas Corpus (Sept. 23, 2025), Doc. No. 1. That same day, ICE transferred Petitioner from Massachusetts to New York on a flight that took off from Bedford, Massachusetts "at approximately 5:05 p.m." Ex. 1, Chan Decl. ¶ 8.[2] Fifteen minutes later, at 5:20 p.m., the Court entered the No-Transfer Order which ruled, among other things:

> The petition alleges that petitioner is being held in the District of Massachusetts. Petitioner shall not be transferred to another district unless the government provides advance notice of the intended move. Such notice shall be filed in writing on the docket in this proceeding, and shall state the reason why the government believes that such a movement is necessary and should not be stayed pending further court proceedings. Once that notice has been docketed, the petitioner shall not be moved out of the District for a period of at least 72 hours from the time of that docketing.

No-Transfer Order, Doc. No. 4 at 3-4.

The No-Transfer Order further directed that the government "promptly" notify the Court if Petitioner "is presently confined" outside the District of Massachusetts. *Id*. at 4. Accordingly, on September 25, 2025, Respondents filed a status report indicating that ICE had transferred Petitioner to New York on a flight departing Bedford, Massachusetts fifteen minutes before the No-Transfer Order entered. Status Report (Sept. 25, 2025), Doc. No. 8 at 1 & n.1.

---

[2] Undersigned counsel previously cited the Chan Declaration in a status report regarding Petitioner's detention location and intended to attach the declaration to that status report, but inadvertently neglected to do so. *See generally* Status Report (Sept. 25, 2025), Doc. No. 8 at 1. Accordingly, undersigned counsel attaches the Chan Declaration to this response to the Show-Cause Order.

2

Four days later, on September 29, 2025, Respondents filed an abbreviated response to the habeas petition, conceding "that this case is materially indistinguishable in relevant part from" this Court's recent decision in *Doe v. Moniz*,[3] "in which this Court held that § 1225 did not govern petitioner's detention." Respondents' Abbreviated Response to the Pet. for a Writ of Habeas Corpus (Sept. 29, 2025), Doc. No. 10 at 4. Thus, Respondents acknowledged that, "[s]hould the Court apply the reasoning of *Doe*, it would reach the same result here, such that § 1226 would govern Petitioner's detention." *Id*.

After ICE transferred Petitioner to Louisiana, *see* Notice of Violation & Mot. for Release Under *Mapp v. Reno* (Oct. 3, 2025), Doc. No. 11 at 3, ICE now informs undersigned counsel that Petitioner is in ICE detention in Massachusetts, per the Court's Order (Doc. No. 12).

## II.   LEGAL STANDARD

The Supreme Court directs that this Court use its "inherent power" of contempt "with restraint and discretion," because the contempt sanction is "shielded from direct democratic controls." *Roadway Exp., Inc.*, 447 U.S. at 764; *AccuSoft Corp. v. Palo*, 237 F.3d 31, 48 (1st Cir. 2001) (noting "the cautionary principles guiding exercise of the contempt sanction"); *Langton v. Johnston*, 928 F.2d 1206, 1221 (1st Cir. 1991) (explaining that a trial court's discretion to order contempt "must be administered flexibly, with due regard for the circumstances"); *id*. at 1222 (noting that the Supreme Court "emphasized that district judges should exercise the 'least possible power' to achieve the remedial end proposed" (quoting *Spallone v. United States*, 493 U.S. 265, 280 (1990))).

---

[3] 25-cv-12094-IT, 2025 WL 2576819, at *4-5 (D. Mass. Sept. 5, 2025)

A finding of contempt requires clear and convincing evidence that "(1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." *See Hawkins*, 665 F.3d at 31 (quoting *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005)); *AccuSoft Corp.*, 237 F.3d at 47. But "even if all of these conditions are satisfied, the trial court retains a certain negative discretion; that is, the court retains the authority to eschew the imposition of a contempt sanction if it deems such eschewal to be in the interests of justice in the particular case." *In re Grand Jury Investigation*, 545 F.3d 21, 25 (1st Cir. 2008).

Moreover, "a finding of contempt [may] be averted where diligent efforts result in substantial compliance with the underlying order." *AccuSoft Corp.*, 237 F.3d at 47. "For this reason, a court may decline to find a party in contempt despite the failure to achieve 'letter-perfect compliance' with the order at issue." *Id*. (quoting *Langton*, 928 F.2d at 1222).

## III.   ARGUMENT

The Secretary of the U.S. Department of Homeland Security has authority "to arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g). Moreover, Respondents' position is that 8 U.S.C. § 1252(a)(2)(B)(ii) bars a district court from reviewing the Secretary's discretionary determination on detention placement.[4] Even so, on the facts here, Respondents did not violate the Court's No-Transfer Order and the Court should not hold them in contempt.

---

[4] *But see Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 20–21 (1st Cir. 2007).

### A.  Respondents Did Not Violate the No-Transfer Order When ICE Transferred Petitioner from Massachusetts to New York

Respondents did not violate the No-Transfer Order because Petitioner's flight from Bedford, Massachusetts to Buffalo, New York took off at 5:05 p.m. on September 23, and the No-Transfer Order did not enter until 15 minutes later.  Ex. 1, Chan Decl. ¶ 8; No-Transfer Order at 3–4.  Similarly, another session of this Court has held that ICE did not violate a no-transfer order where the flight transferring Petitioner to New York took off from Bedford, Massachusetts just *four* minutes before the no-transfer order issued.  Electronic Order, *Araujo v. Hyde*, No. 25-cv-12585-JEK (D. Mass. Sept. 26, 2025), Doc. No. 17.  Thus, the Court should not hold Respondents in contempt because ICE could not have had notice of the No-Transfer Order—or violated it—at the time Petitioner's flight took off for New York.  *See Hawkins*, 665 F.3d at 31.

### B.  The Court Should Not Hold Respondents in Contempt for Transferring Petitioner from New York to Louisiana

Nor did Petitioner's subsequent transfer from New York to Louisiana violate the Court's No-Transfer Order.  Instead, Respondent respectfully submits that—as at least one other session of this Court appears to have recognized—the No-Transfer Order applied only to a transfer of Petitioner from Massachusetts to another district.

To that end, the relevant paragraph of the Court's No-Transfer Order began with the premise that Petitioner was "being held in the District of Massachusetts."  No-Transfer Order, Doc. No. 4 at 3.  It was only with that understanding that the next sentence ordered that "Petitioner shall not be transferred to another district unless the government provides advance notice of the intended move."  *Id*.  Thus, the No-Transfer Order went on to require advance notice before Petitioner is "moved out of the District"—*i.e.*, out of the District of Massachusetts.  *Id*. at 4.  But here, the No-Transfer Order was not in effect when ICE "moved" Petitioner "out of

5

the District." And the No-Transfer Order does not speak to ICE's subsequently moving Petitioner "out of" any other district.

Apparently recognizing this limitation of the no-transfer order, another session of this Court recently entered an additional order—beyond the court's typical no-transfer order—to preclude a petitioner's transfer from the Southern District of California to any other district. *See* Electronic Order, *De Leon v. Hyde*, No. 25-cv-12490-LTS (D. Mass. Oct. 1, 2025) (explaining that ICE transferred petitioner from Massachusetts to New York "before Judge Young's order staying any transfer of the petitioner"; that "[n]o further orders entered limiting the petitioner's transfer"; and thus entering a further order precluding petitioner's transfer from his current detention location in the Southern District of California, absent advanced notice).[5] The court's entry of an additional order precluding transfer from the Southern District of California would have been superfluous if the court's initial no-transfer order applied.

Accordingly, the Court's No-Transfer Order did not preclude Petitioner's transfer from New York to Louisiana after the valid transfer from Massachusetts to New York. Or, at the very least, the No-Transfer Order did not "clear[ly] and unambiguous[ly]" prevent ICE from transferring Petitioner from New York to Louisiana, such that the Court should not hold Respondents in contempt for that transfer. *See Hawkins*, 665 F.3d at 31.

## IV. CONCLUSION

For the foregoing reasons, the Court should not hold Respondents in contempt for violating the Court's No-Transfer Order.

---

[5] The initial no-transfer order in *De Leon* was substantially identical in relevant part to the No-Transfer Order in this case. *Compare* Order Concerning Service of Pet. & Stay of Transfer or Removal, *De Leon v. Hyde*, No. 25-cv-12490 (D. Mass. Sept. 9, 2025), Doc. No. 4 at 3–4, *with* No-Transfer Order, Doc. No. 4 at 3-4.

Dated: October 6, 2025                                         Respectfully submitted,

                                                                                                      LEAH B. FOLEY
                                                                                                      United States Attorney

By:    */s/ Julian N. Canzoneri*
        Julian N. Canzoneri
        Assistant United States Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        617-748-3170
        julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I, Julian N. Canzoneri, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: October 6, 2025                            By:    */s/ Julian N. Canzoneri*
                                                                          Julian N. Canzoneri
                                                                          Assistant United States Attorney